E-FILED
Wednesday, 18 December, 2024  05:07:27 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT B

FILED
SCHUYLER COUNTY ILLINOIS
3/13/2024 6:13 PM
KAY PAISLEY
CLERK OF THE CIRCUIT COURT

IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT
SCHUYLER COUNTY, ILLINOIS

| | | |
|---|---|---|
| BRADLEY REBMAN,<br>Independent Administrator of<br>the Estate of DONALD REBMAN, deceased,<br><br>Plaintiff,<br><br>v.<br><br>THE LAMOINE RETIREMENT LIVING, and<br>LAMOINE GROUP, LLC<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 2024 LA 3<br><br>JURY DEMANDED |

## AMENDED COMPLAINT

Plaintiff, BRADLEY REBMAN, Independent Administrator of the Estate of DONALD

REBMAN, deceased, by his attorneys, KONICEK & DILLON, P.C., states as follows for his

Amended Complaint against defendants THE LAMOINE RETIREMENT LIVING and

LAMOINE GROUP, LLC:

### COUNT ONE
### (THE LAMOINE RETIREMENT LIVING)
### (NEGLIGENCE – SURVIVAL)

1.     DONALD REBMAN ("Donald") was an individual who lived in Rushville, Illinois

before being admitted to THE LAMOINE RETIREMENT LIVING ("LAMOINE") on October 25,

2021.

2.     Plaintiff, BRADLEY REBMAN ("BRADLEY") is Donald's son, and is the Court-

Appointed Independent Administrator of the Estate of Donald Rebman effective January 30,

2024. Bradley brings this action in his capacity as Administrator of Donald's Estate.

1

HAMILTON0062

3.    THE LAMOINE RETIREMENT LIVING is a retirement living facility with assisted living and memory care services. LAMOINE is and at all times relevant in this Complaint has been a facility owned, operated managed, maintained and/or controlled by LAMOINE GROUP, LLC, ("LAMOINE GROUP").

4.    At all relevant times LAMOINE has been licensed by the Illinois Department of Public Health to operate an assisted living facility and memory care facility, in Macomb, Illinois.

5.    Venue is proper pursuant to 735 ILCS 5/2-101 because Donald Rebman lived in Schuyler County, his probate estate is pending in Schuyler County, and the damages from the wrongful death of Donald Rebman occurred in part in Schuyler County, Illinois.

6.    Donald was assessed by his primary care physician before becoming a resident of LAMOINE. His physician determined that he needed assistance with activities of daily living including dressing, toileting, bathing, and personal hygiene. He also needed assistance with medications in the form of supervision and then the administration of his medications.

7.    By accepting Donald as a resident in a memory care unit, LAMOINE agreed to provide and was required to provide services and to promote Donald's safety and well-being. For this purpose, LAMOINE employed nurses, CNAs, professionals, and other employees and agents, apparent or otherwise (collectively referred to as "staff").

8.    Initial assessments conducted by staff reveal that Donald required, and LAMOINE was required to provide, assistance with numerous activities of daily living, including hygiene, dressing, toileting, and medication management. Due to cognitive deficits caused by dementia, Donald was unable to handle his personal and financial affairs, a disability that affected him for the remainder of his life.

HAMILTON0063

9.     On February 23, 2022, Donald was sent to McDonough District Hospital following a fall at LAMOINE.

10.    At McDonough District Hospital, Donald was diagnosed with two fractures of his pelvis. Donald was sent back to LAMOINE the same day.

11.    After returning to LAMOINE, Donald was in pain from the fractures to his pelvis and needed additional assistance with activities of daily living.

12.    Donald was at greater risk of developing skin breakdown due to immobility caused by the pain from the pelvic fractures.

13.    On February 28, 2022, Donald was found by staff on the floor of his memory care suite complaining of pain.

14.    Donald was transferred to McDonough District Hospital on February 28, 2022, where he was again diagnosed with pelvic fractures in addition to severe dehydration, infection, sepsis, and skin breakdown.

15.    Donald was hospitalized at McDonough District Hospital until March 7, 2022, when he was transferred to a skilled nursing facility, Heritage Health in Mount Sterling, Illinois, for rehabilitation services. Donald was receiving rehabilitation services consisting of occupational therapy and physical therapy when he died on April 5, 2022.

16.    Prior to and after his re-admission to LAMOINE on February 23, 2022, LAMOINE had a duty to provide Donald with the care, services, and assistance set forth in his service plan and further had a duty to refuse him as a resident if LAMOINE could not meet his care needs and/or he was not suitable for assisted living.

3

HAMILTON0064

17.    At all relevant times, LAMOINE was an assisted living facility as defined by 210 ILCS 9/10 of the Assisted Living and Shared Housing Act ("the Act").

18.    At all relevant times, Donald was a resident of LAMOINE as defined by 201 ILCS 9/10 of the Act.

19.    LAMOINE, by and through its employees, professionals, agents, actual or apparent, and/or servants, had a duty to exercise that care required of a reasonably careful assisted living facility under the same or similar circumstances to provide a safe environment for its residents, and Donald in particular.

20.    LAMOINE breached its duty to exercise due care and caution in the care, monitoring, and treatment of Donald by committing one or more of the following negligent acts or omissions:

a.    Failed to protect Donald from neglect of his needs, including toileting, skin care, wound prevention, hydration, and activities of daily living;

b.    In violation of 210 ILCS 9/95 of the Illinois Assisted Living and Shared Housing Act, failed to protect Donald's right to be free from neglect;

c.    Failed to develop, modify and implement a service plan that adequately addressed Donald's needs, including his dehydration risk, fall risk, and risk of skin breakdown;

d.    Failed to implement interventions and provide services required to prevent or minimize the risk to Donald of sustaining injury or harm from falling;

e.    Failed to provide care, services, monitoring, and supervision to prevent Donald from developing severe skin breakdown;

h.    Failed to properly assess Donald's suitability for continued residency in an assisted living environment upon his admission in October 2021 and after a significant change in his condition;

HAMILTON0065

i.   Negligently re-admitted Donald to its facility on February 23rd, when his medical and physical condition and needs made him unsuitable for an assisted living environment;

j.   Failed to provide Donald assistance with activities of daily living that Donald required, in violation of section 295.4020 of the Assisted Living and Shared Housing Establishment Code;

k.   Failed to modify and implement a service plan that adequately addressed Donald's significant changes, including his fall risk, medications and behaviors, nutritional needs, and risk of skin breakdown;

l.   Negligently managed Donald's urinary catheter, including improperly inserting the catheter, preventing him from voiding urine; and

m.   Was otherwise careless and negligent.

21.   As a direct and proximate result of LAMOINE's negligence as set forth above, Donald suffered personal and pecuniary damages, including but not limited to experiencing pain, suffering, disability, and anguish.

22.   Donald sustained damages prior to his death because of the foregoing negligence for which he would have been entitled to bring an action had he survived, and this right of action survives him.

23.   BRADLEY REBMAN brings this action for Donald under the provisions of 755 ILCS 5/27-6, known as the Illinois Survival Statute, and this cause of action survives Donald's death.

24.   Attached and incorporated in this Complaint as **Exhibit A** is the affidavit of one of Plaintiff's attorneys filed pursuant to 735 ILCS 5/2-622.

*WHEREFORE*, Plaintiff, BRADLEY REBMAN, as Court-Appointed Representative of the Estate of DONALD REBMAN, deceased, demands judgment against Defendant, THE LAMOINE

HAMILTON0066

RETIREMENT LIVING, in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus costs of suit, statutory remedies, and all other relief this Court deems appropriate.

## COUNT TWO
## (LAMOINE GROUP, LLC)
## (NEGLIGENCE – SURVIVAL)

1.     DONALD REBMAN ("Donald") was an individual who lived in Rushville, Illinois before being admitted to THE LAMOINE RETIREMENT LIVING ("LAMOINE") on October 25, 2021.

2.     Plaintiff, BRADLEY REBMAN ("BRADLEY") is Donald's son, and is the Court-Appointed Independent Administrator of the Estate of Donald Rebman effective January 30, 2024. Bradley brings this action in his capacity as Administrator of Donald's Estate.

3.     THE LAMOINE RETIREMENT LIVING is a retirement living facility with assisted living and memory care services. LAMOINE is and at all times relevant in this Complaint has been a facility owned, operated managed, maintained and/or controlled by LAMOINE GROUP, LLC, ("LAMOINE GROUP").

4.     At all relevant times LAMOINE has been licensed by the Illinois Department of Public Health to operate an assisted living facility and memory care facility, in Macomb, Illinois.

5.     Venue is proper pursuant to 735 ILCS 5/2-101 because Donald Rebman lived in Schuyler County, his probate estate is pending in Schuyler County, and the damages from the wrongful death of Donald Rebman occurred in part in Schuyler County, Illinois.

6.     Donald was assessed by his primary care physician before becoming a resident of LAMOINE. His physician determined that he needed assistance with activities of daily living

HAMILTON0067

This form is approved by the Illinois Supreme Court and must be accepted in all Illinois Courts. Forms are free at ilcourts.info/forms.

| STATE OF ILLINOIS, CIRCUIT COURT Schuyler COUNTY | ADDITIONAL DEFENDANT/RESPONDENT ADDRESS AND SERVICE INFORMATION FOR SUMMONS | For Court Use Only |
|---|---|---|

| Instructions | BRADLEY REBMAN, Independent Administrator of the Estate of DONALD REBMAN, deceased, | |
|---|---|---|
| Enter above the county name where the case was filed. | **Plaintiff / Petitioner** (First, middle, last name) | |
| Enter your name as Plaintiff/Petitioner. | | |
| Below "Defendants/ Respondents," enter the names of all people you are suing. | v. **Defendants / Respondents** (First, middle, last name) The Lamoine Retirement Living, and | 2024 LA 3 |
| Enter the Case Number given by the Circuit Clerk. | Lamoine Group, LLC | **Case Number** |
| | ☐ **Alias Summons** (Check this box if this is not the 1st Summons issued for this Defendant.) | |

| | |
|---|---|
| In 1a, enter the name and address of the next Defendant/ Respondent you are serving. If you are serving a Registered Agent, include the Registered Agent's name and address here. | **1. Next Defendant/Respondent's address and service information:** a. Defendant/Respondent's primary address/information for service: Name *(First, Middle, Last)*:  Lamoine Group, LLC Registered Agent's name, if any:  Chris Trotter Street Address, Unit #:  900 Doran Drive City, State, ZIP:  Macomb, IL 61455 Telephone: _____ Email: _____ |
| In 1b, enter a second address for this Defendant/ Respondent if you have one. | b. If you have more than one address where Defendant/Respondent might be found, list that here: Name *(First, Middle, Last)*:  Lamoine Group, LLC Street Address, Unit #:  306 E. South Street City, State, ZIP:  Industry, IL 61440 Telephone: _____ Email: _____ |
| In 1c, check how you are sending your documents to this Defendant/ Respondent. | c. Method of service on Defendant/Respondent: ☐ Sheriff          ☐ Sheriff outside Illinois: _____ *County & State* ☑ Special process server     ☐ Licensed private detective |

HAMILTON0068

FILED
SCHUYLER COUNTY ILLINOIS
3/13/2024 6:13 PM
KAY PAISLEY
CLERK OF THE CIRCUIT COURT

IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT
SCHUYLER COUNTY, ILLINOIS

| | | |
|---|---|---|
| BRADLEY REBMAN, <br> Independent Administrator of <br> the Estate of DONALD REBMAN, deceased, | ) <br> ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | Case No. 2024 LA 3 |
| | ) | |
| v. | ) <br> ) | JURY DEMANDED |
| THE LAMOINE RETIREMENT LIVING, and <br> LAMOINE GROUP, LLC | ) <br> ) <br> ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

Plaintiff, BRADLEY REBMAN, Independent Administrator of the Estate of DONALD REBMAN, deceased, by his attorneys, KONICEK & DILLON, P.C., states as follows for his Amended Complaint against defendants THE LAMOINE RETIREMENT LIVING and LAMOINE GROUP, LLC:

### COUNT ONE
### (THE LAMOINE RETIREMENT LIVING)
### (NEGLIGENCE – SURVIVAL)

1.    DONALD REBMAN ("Donald") was an individual who lived in Rushville, Illinois before being admitted to THE LAMOINE RETIREMENT LIVING ("LAMOINE") on October 25, 2021.

2.    Plaintiff, BRADLEY REBMAN ("BRADLEY") is Donald's son, and is the Court-Appointed Independent Administrator of the Estate of Donald Rebman effective January 30, 2024. Bradley brings this action in his capacity as Administrator of Donald's Estate.

1

HAMILTON0069

3.    THE LAMOINE RETIREMENT LIVING is a retirement living facility with assisted living and memory care services. LAMOINE is and at all times relevant in this Complaint has been a facility owned, operated managed, maintained and/or controlled by LAMOINE GROUP, LLC, ("LAMOINE GROUP").

4.    At all relevant times LAMOINE has been licensed by the Illinois Department of Public Health to operate an assisted living facility and memory care facility, in Macomb, Illinois.

5.    Venue is proper pursuant to 735 ILCS 5/2-101 because Donald Rebman lived in Schuyler County, his probate estate is pending in Schuyler County, and the damages from the wrongful death of Donald Rebman occurred in part in Schuyler County, Illinois.

6.    Donald was assessed by his primary care physician before becoming a resident of LAMOINE. His physician determined that he needed assistance with activities of daily living including dressing, toileting, bathing, and personal hygiene. He also needed assistance with medications in the form of supervision and then the administration of his medications.

7.    By accepting Donald as a resident in a memory care unit, LAMOINE agreed to provide and was required to provide services and to promote Donald's safety and well-being. For this purpose, LAMOINE employed nurses, CNAs, professionals, and other employees and agents, apparent or otherwise (collectively referred to as "staff").

8.    Initial assessments conducted by staff reveal that Donald required, and LAMOINE was required to provide, assistance with numerous activities of daily living, including hygiene, dressing, toileting, and medication management. Due to cognitive deficits caused by dementia, Donald was unable to handle his personal and financial affairs, a disability that affected him for the remainder of his life.

2

HAMILTON0070

9. On February 23, 2022, Donald was sent to McDonough District Hospital following a fall at LAMOINE.

10. At McDonough District Hospital, Donald was diagnosed with two fractures of his pelvis. Donald was sent back to LAMOINE the same day.

11. After returning to LAMOINE, Donald was in pain from the fractures to his pelvis and needed additional assistance with activities of daily living.

12. Donald was at greater risk of developing skin breakdown due to immobility caused by the pain from the pelvic fractures.

13. On February 28, 2022, Donald was found by staff on the floor of his memory care suite complaining of pain.

14. Donald was transferred to McDonough District Hospital on February 28, 2022, where he was again diagnosed with pelvic fractures in addition to severe dehydration, infection, sepsis, and skin breakdown.

15. Donald was hospitalized at McDonough District Hospital until March 7, 2022, when he was transferred to a skilled nursing facility, Heritage Health in Mount Sterling, Illinois, for rehabilitation services. Donald was receiving rehabilitation services consisting of occupational therapy and physical therapy when he died on April 5, 2022.

16. Prior to and after his re-admission to LAMOINE on February 23, 2022, LAMOINE had a duty to provide Donald with the care, services, and assistance set forth in his service plan and further had a duty to refuse him as a resident if LAMOINE could not meet his care needs and/or he was not suitable for assisted living.

3

HAMILTON0071

17.    At all relevant times, LAMOINE was an assisted living facility as defined by 210 ILCS 9/10 of the Assisted Living and Shared Housing Act ("the Act").

18.    At all relevant times, Donald was a resident of LAMOINE as defined by 201 ILCS 9/10 of the Act.

19.    LAMOINE, by and through its employees, professionals, agents, actual or apparent, and/or servants, had a duty to exercise that care required of a reasonably careful assisted living facility under the same or similar circumstances to provide a safe environment for its residents, and Donald in particular.

20.    LAMOINE breached its duty to exercise due care and caution in the care, monitoring, and treatment of Donald by committing one or more of the following negligent acts or omissions:

a.    Failed to protect Donald from neglect of his needs, including toileting, skin care, wound prevention, hydration, and activities of daily living;

b.    In violation of 210 ILCS 9/95 of the Illinois Assisted Living and Shared Housing Act, failed to protect Donald's right to be free from neglect;

c.    Failed to develop, modify and implement a service plan that adequately addressed Donald's needs, including his dehydration risk, fall risk, and risk of skin breakdown;

d.    Failed to implement interventions and provide services required to prevent or minimize the risk to Donald of sustaining injury or harm from falling;

e.    Failed to provide care, services, monitoring, and supervision to prevent Donald from developing severe skin breakdown;

h.    Failed to properly assess Donald's suitability for continued residency in an assisted living environment upon his admission in October 2021 and after a significant change in his condition;

4

HAMILTON0072

i.   Negligently re-admitted Donald to its facility on February 23rd, when his medical and physical condition and needs made him unsuitable for an assisted living environment;

j.   Failed to provide Donald assistance with activities of daily living that Donald required, in violation of section 295.4020 of the Assisted Living and Shared Housing Establishment Code;

k.   Failed to modify and implement a service plan that adequately addressed Donald's significant changes, including his fall risk, medications and behaviors, nutritional needs, and risk of skin breakdown;

l.   Negligently managed Donald's urinary catheter, including improperly inserting the catheter, preventing him from voiding urine; and

m.   Was otherwise careless and negligent.

21.   As a direct and proximate result of LAMOINE's negligence as set forth above, Donald suffered personal and pecuniary damages, including but not limited to experiencing pain, suffering, disability, and anguish.

22.   Donald sustained damages prior to his death because of the foregoing negligence for which he would have been entitled to bring an action had he survived, and this right of action survives him.

23.   BRADLEY REBMAN brings this action for Donald under the provisions of 755 ILCS 5/27-6, known as the Illinois Survival Statute, and this cause of action survives Donald's death.

24.   Attached and incorporated in this Complaint as **Exhibit A** is the affidavit of one of Plaintiff's attorneys filed pursuant to 735 ILCS 5/2-622.

*WHEREFORE*, Plaintiff, BRADLEY REBMAN, as Court-Appointed Representative of the Estate of DONALD REBMAN, deceased, demands judgment against Defendant, THE LAMOINE

5

RETIREMENT LIVING, in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus costs of suit, statutory remedies, and all other relief this Court deems appropriate.

**COUNT TWO**
**(LAMOINE GROUP, LLC)**
**(NEGLIGENCE – SURVIVAL)**

1.      DONALD REBMAN ("Donald") was an individual who lived in Rushville, Illinois before being admitted to THE LAMOINE RETIREMENT LIVING ("LAMOINE) on October 25, 2021.

2.      Plaintiff, BRADLEY REBMAN ("BRADLEY") is Donald's son, and is the Court-Appointed Independent Administrator of the Estate of Donald Rebman effective January 30, 2024. Bradley brings this action in his capacity as Administrator of Donald's Estate.

3.      THE LAMOINE RETIREMENT LIVING is a retirement living facility with assisted living and memory care services. LAMOINE is and at all times relevant in this Complaint has been a facility owned, operated managed, maintained and/or controlled by LAMOINE GROUP, LLC, ("LAMOINE GROUP").

4.      At all relevant times LAMOINE has been licensed by the Illinois Department of Public Health to operate an assisted living facility and memory care facility, in Macomb, Illinois.

5.      Venue is proper pursuant to 735 ILCS 5/2-101 because Donald Rebman lived in Schuyler County, his probate estate is pending in Schuyler County, and the damages from the wrongful death of Donald Rebman occurred in part in Schuyler County, Illinois.

6.      Donald was assessed by his primary care physician before becoming a resident of LAMOINE. His physician determined that he needed assistance with activities of daily living

HAMILTON0074

including dressing, toileting, bathing, and personal hygiene. He also needed assistance with medications in the form of supervision and then the administration of his medications.

7.    By accepting him as a resident in a memory care unit, LAMOINE agreed to provide and was required to provide services and to promote Donald's safety and well-being. For this purpose, LAMOINE employed nurses, CNAs, professionals, and other employees and agents, apparent or otherwise (collectively referred to as "staff").

8.    Initial assessments conducted by staff reveal that Donald required, and LAMOINE was required to provide, assistance with numerous activities of daily living, including hygiene, dressing, toileting, and medication management. Due to cognitive deficits caused by dementia, Donald was unable to handle his personal and financial affairs, a disability that affected him for the remainder of his life.

9.    On February 23, 2022, Donald was sent to McDonough District Hospital following a fall at LAMOINE.

10.    At McDonough District Hospital, Donald was diagnosed with two fractures of his pelvis. Donald was sent back to LAMOINE the same day.

11.    After returning to LAMOINE, Donald was in pain from the fractures to his pelvis and needed additional assistance with activities of daily living.

12.    Donald was at greater risk of developing skin breakdown due to immobility caused by the pain from the pelvic fractures.

13.    On February 28, 2022, Donald was found by staff on the floor of his memory care suite complaining of pain.

7

HAMILTON0075

14.    Donald was transferred to McDonough District Hospital on February 28, 2022, where he was again diagnosed with pelvic fractures in addition to severe dehydration, infection, sepsis, and skin breakdown.

15.    Donald was hospitalized at McDonough District Hospital until March 7, 2022, when he was transferred to a skilled nursing facility, Heritage Health in Mount Sterling, Illinois, for rehabilitation services. Donald was receiving rehabilitation services consisting of occupational therapy and physical therapy when he died on April 5, 2022.

16.    Prior to and after his re-admission to LAMOINE on February 23, 2022, LAMOINE had a duty to provide Donald with the care, services, and assistance set forth in his service plan and further had a duty to refuse him as a resident if LAMOINE could not meet his care needs and/or he was not suitable for assisted living.

17.    At all relevant times, LAMOINE GROUP owned and operated an assisted living facility as defined by 210 ILCS 9/10 of the Assisted Living and Shared Housing Act ("the Act").

18.    At all relevant times, Donald was a resident of LAMOINE GROUP'S assisted living facility, LAMOINE, as defined by 201 ILCS 9/10 of the Act.

19.    LAMOINE GROUP, by and through its employees, professionals, agents, actual or apparent, and/or servants, had a duty to exercise that care required of a reasonably careful assisted living facility under the same or similar circumstances to provide a safe environment for its residents, and Donald in particular.

20.    LAMOINE GROUP breached its duty to exercise due care and caution in the care, monitoring, and treatment of Donald by committing one or more of the following negligent acts or omissions:

HAMILTON0076

a. Failed to protect Donald from neglect of his needs, including toileting, skin care, wound prevention, hydration, and activities of daily living;

b. In violation of 210 ILCS 9/95 of the Illinois Assisted Living and Shared Housing Act, failed to protect Donald's right to be free from neglect;

c. Failed to develop, modify and implement a service plan that adequately addressed Donald's needs, including his dehydration risk, fall risk, and risk of skin breakdown;

d. Failed to implement interventions required to prevent or minimize the risk to Donald of sustaining injury or harm from falling;

e. Failed to provide care, monitoring, and supervision to prevent Donald from developing severe skin breakdown;

h. Failed to properly assess Donald's suitability for continued residency in an assisted living environment upon his admission in October 2021 and after a significant change in his condition;

i. Negligently re-admitted Donald to its facility on February 23rd, when his medical and physical condition and needs made him unsuitable for an assisted living environment;

j. Failed to provide Donald assistance with activities of daily living that Donald required, in violation of section 295.4020 of the Assisted Living and Shared Housing Establishment Code;

k. Failed to modify and implement a service plan that adequately addressed Donald's significant changes, including his fall risk, medications and behaviors, nutritional needs, and risk of skin breakdown;

l. Negligently managed Donald's urinary catheter, including improperly inserting the catheter, preventing him from voiding urine; and

m. Was otherwise careless and negligent.

21. As a direct and proximate result of LAMOINE's negligence as set forth above, Donald suffered personal and pecuniary damages, including but not limited to experiencing pain, suffering, disability, and anguish.

9

HAMILTON0077

22. Donald sustained damages prior to his death because of the foregoing negligence for which he would have been entitled to bring an action had he survived, and this right of action survives him.

23. BRADLEY REBMAN brings this action for Donald under the provisions of 755 ILCS 5/27-6, known as the Illinois Survival Statute, and this cause of action survives Donald's death.

24. Attached and incorporated in this Complaint as **Exhibit A** is the affidavit of one of Plaintiff's attorneys filed pursuant to 735 ILCS 5/2-622.

*WHEREFORE*, Plaintiff, BRADLEY REBMAN, as Court-Appointed Representative of the Estate of DONALD REBMAN, deceased, demands judgment against Defendant, LAMOINE GROUP, LLC, in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus costs of suit, statutory remedies, and all other relief this Court deems appropriate.

## COUNT THREE
### (THE LAMOINE RETIREMENT LIVING)
### (NEGLIGENCE – WRONGFUL DEATH)

1. DONALD REBMAN ("Donald") was an individual who lived in Rushville, Illinois before being admitted to THE LAMOINE RETIREMENT LIVING ("LAMOINE) on October 25, 2021.

2. Plaintiff, BRADLEY REBMAN ("BRADLEY") is Donald's son, and is the Court-Appointed Independent Administrator of the Estate of Donald Rebman effective January 30, 2024. Bradley brings this action in his capacity as Administrator of Donald's Estate.

3. THE LAMOINE RETIREMENT LIVING is a retirement living facility with assisted living and memory care services. LAMOINE is and at all times relevant in this Complaint has

10

HAMILTON0078

been a facility owned, operated managed, maintained and/or controlled by LAMOINE GROUP, LLC, ("LAMOINE GROUP").

4.     At all relevant times LAMOINE has been licensed by the Illinois Department of Public Health to operate an assisted living facility and memory care facility, in Macomb, Illinois.

5.     Venue is proper pursuant to 735 ILCS 5/2-101 because Donald Rebman lived in Schuyler County, his probate estate is pending in Schuyler County, and the damages from the wrongful death of Donald Rebman occurred in part in Schuyler County, Illinois.

6.     Donald was assessed by his primary care physician before becoming a resident of LAMOINE. His physician determined that he needed assistance with activities of daily living including dressing, toileting, bathing, and personal hygiene. He also needed assistance with medications in the form of supervision and then the administration of his medications.

7.     By accepting him as a resident in a memory care unit, LAMOINE agreed to provide and was required to provide services and to promote Donald's safety and well-being. For this purpose, LAMOINE employed nurses, CNAs, professionals, and other employees and agents, apparent or otherwise (collectively referred to as "staff").

8.     Initial assessments conducted by staff reveal that Donald required, and LAMOINE was required to provide, assistance with numerous activities of daily living, including hygiene, dressing, toileting, and medication management. Due to cognitive deficits caused by dementia, Donald was unable to handle his personal and financial affairs, a disability that affected him for the remainder of his life.

9.     On February 23, 2022, Donald was sent to McDonough District Hospital following a fall at LAMOINE.

11

HAMILTON0079

10.     At McDonough District Hospital, Donald was diagnosed with two fractures of his pelvis. Donald was sent back to LAMOINE the same day.

11.     After returning to LAMOINE, Donald was in pain from the fractures to his pelvis and needed additional assistance with activities of daily living.

12.     Donald was at greater risk of developing skin breakdown due to immobility caused by the pain from the pelvic fractures.

13.     On February 28, 2022, Donald was found by staff on the floor of his memory care suite complaining of pain.

14.     Donald was transferred to McDonough District Hospital on February 28, 2022, where he was again diagnosed with pelvic fractures in addition to severe dehydration, infection, sepsis, and skin breakdown.

15.     Donald was hospitalized at McDonough District Hospital until March 7, 2022, when he was transferred to a skilled nursing facility, Heritage Health in Mount Sterling, Illinois, for rehabilitation services. Donald was receiving rehabilitation services consisting of occupational therapy and physical therapy when he died on April 5, 2022.

16.     Prior to and after his re-admission to LAMOINE on February 23, 2022, LAMOINE had a duty to provide Donald with the care, services, and assistance set forth in his service plan and further had a duty to refuse him as a resident if LAMOINE could not meet his care needs and/or he was not suitable for assisted living.

17.     At all relevant times, LAMOINE was an assisted living facility as defined by 210 ILCS 9/10 of the Assisted Living and Shared Housing Act ("the Act").

HAMILTON0080

18.    At all relevant times, Donald was a resident of LAMOINE as defined by 201 ILCS 9/10 of the Act.

19.    LAMOINE, by and through its employees, professionals, agents, actual or apparent, and/or servants, had a duty to exercise that care required of a reasonably careful assisted living facility under the same or similar circumstances to provide a safe environment for its residents, and Donald in particular.

20.    LAMOINE breached its duty to exercise due care and caution in the care, monitoring, and treatment of Donald by committing one or more of the following negligent acts or omissions:

    a.    Failed to protect Donald from neglect of his needs, including toileting, skin care, wound prevention, hydration, and activities of daily living;

    b.    In violation of 210 ILCS 9/95 of the Illinois Assisted Living and Shared Housing Act, failed to protect Donald's right to be free from neglect;

    c.    Failed to develop, modify and implement a service plan that adequately addressed Donald's needs, including his dehydration risk, fall risk, and risk of skin breakdown;

    d.    Failed to implement interventions and provide services required to prevent or minimize the risk to Donald of sustaining injury or harm from falling;

    e.    Failed to provide care, services, monitoring, and supervision to prevent Donald from developing severe skin breakdown;

    h.    Failed to properly assess Donald's suitability for continued residency in an assisted living environment upon his admission in October 2021 and after a significant change in his condition;

    i.    Negligently re-admitted Donald to its facility on February 23rd, when his medical and physical condition and needs made him unsuitable for an assisted living environment;

HAMILTON0081

j.  Failed to provide Donald assistance with activities of daily living that Donald required, in violation of section 295.4020 of the Assisted Living and Shared Housing Establishment Code;

k.  Failed to modify and implement a service plan that adequately addressed Donald's significant changes, including his fall risk, medications and behaviors, nutritional needs, and risk of skin breakdown;

l.  Negligently managed Donald's urinary catheter, including improperly inserting the catheter, preventing him from voiding urine; and

m.  Was otherwise careless and negligent.

21.  As a direct and proximate result of LAMOINE's negligence as set forth above, Donald suffered personal injuries and died as a result of those injuries on April 5, 2022.

22.  As a result of Donald Rebman's death, his next of kin, Linda Rebman, Bradley Rebman, Joseph Rebman, and Mary Rebman, suffered a loss of companionship and society, grief, sorrow, and mental suffering.

23.  Bradley Rebman brings this action as the next of kin of Donald Rebman for damages incurred as a result of his death pursuant to 740 ILCS 180/0.01, *et seq.*, commonly known as the Illinois Wrongful Death Act.

24.  Attached and incorporated in this Complaint as **Exhibit A** is the affidavit of one of Plaintiff's attorneys filed pursuant to 735 ILCS 5/2-622.

*WHEREFORE*, Plaintiff, BRADLEY REBMAN, as Court-Appointed Representative of the Estate of DONALD REBMAN, deceased, demands judgment against Defendant, THE LAMOINE RETIREMENT LIVING, in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus costs of suit, statutory remedies, and all other relief this Court deems appropriate.

14

HAMILTON0082

## COUNT FOUR
## (LAMOINE GROUP, LLC)
## (NEGLIGENCE – WRONGFUL DEATH)

1.    DONALD REBMAN ("Donald") was an individual who lived in Rushville, Illinois before being admitted to THE LAMOINE RETIREMENT LIVING ("LAMOINE) on October 25, 2021.

2.    Plaintiff, BRADLEY REBMAN ("BRADLEY") is Donald's son, and is the Court-Appointed Independent Administrator of the Estate of Donald Rebman effective January 30, 2024. Bradley brings this action in his capacity as Administrator of Donald's Estate.

3.    THE LAMOINE RETIREMENT LIVING is a retirement living facility with assisted living and memory care services. LAMOINE is and at all times relevant in this Complaint has been a facility owned, operated managed, maintained and/or controlled by LAMOINE GROUP, LLC, ("LAMOINE GROUP").

4.    At all relevant times LAMOINE has been licensed by the Illinois Department of Public Health to operate an assisted living facility and memory care facility, in Macomb, Illinois.

5.    Venue is proper pursuant to 735 ILCS 5/2-101 because Donald Rebman lived in Schuyler County, his probate estate is pending in Schuyler County, and the damages from the wrongful death of Donald Rebman occurred in part in Schuyler County, Illinois.

6.    Donald was assessed by his primary care physician before becoming a resident of LAMOINE. His physician determined that he needed assistance with activities of daily living including dressing, toileting, bathing, and personal hygiene. He also needed assistance with medications in the form of supervision and then the administration of his medications.

HAMILTON0083

7.    By accepting him as a resident in a memory care unit, LAMOINE agreed to provide and was required to provide services and to promote Donald's safety and well-being. For this purpose, LAMOINE employed nurses, CNAs, professionals, and other employees and agents, apparent or otherwise (collectively referred to as "staff").

8.    Initial assessments conducted by staff reveal that Donald required, and LAMOINE was required to provide, assistance with numerous activities of daily living, including hygiene, dressing, toileting, and medication management. Due to cognitive deficits caused by dementia, Donald was unable to handle his personal and financial affairs, a disability that affected him for the remainder of his life.

9.    On February 23, 2022, Donald was sent to McDonough District Hospital following a fall at LAMOINE.

10.    At McDonough District Hospital, Donald was diagnosed with two fractures of his pelvis. Donald was sent back to LAMOINE the same day.

11.    After returning to LAMOINE, Donald was in pain from the fractures to his pelvis and needed additional assistance with activities of daily living.

12.    Donald was at greater risk of developing skin breakdown due to immobility caused by the pain from the pelvic fractures.

13.    On February 28, 2022, Donald was found by staff on the floor of his memory care suite complaining of pain.

14.    Donald was transferred to McDonough District Hospital on February 28, 2022, where he was again diagnosed with pelvic fractures in addition to severe dehydration, infection, sepsis, and skin breakdown.

HAMILTON0084

15.     Donald was hospitalized at McDonough District Hospital until March 7, 2022, when he was transferred to a skilled nursing facility, Heritage Health in Mount Sterling, Illinois, for rehabilitation services. Donald was receiving rehabilitation services consisting of occupational therapy and physical therapy when he died on April 5, 2022.

16.     Prior to and after his re-admission to LAMOINE on February 23, 2022, LAMOINE had a duty to provide Donald with the care, services, and assistance set forth in his service plan and further had a duty to refuse him as a resident if LAMOINE could not meet his care needs and/or he was not suitable for assisted living.

17. .    At all relevant times, LAMOINE GROUP owned and operated an assisted living facility as defined by 210 ILCS 9/10 of the Assisted Living and Shared Housing Act ("the Act").

18.     At all relevant times, Donald was a resident of LAMOINE GROUP'S assisted living facility, LAMOINE, as defined by 201 ILCS 9/10 of the Act.

19.     LAMOINE GROUP, by and through its employees, professionals, agents, actual or apparent, and/or servants, had a duty to exercise that care required of a reasonably careful assisted living facility under the same or similar circumstances to provide a safe environment for its residents, and Donald in particular.

20.     LAMOINE GROUP breached its duty to exercise due care and caution in the care, monitoring, and treatment of Donald by committing one or more of the following negligent acts or omissions:

    a.     Failed to protect Donald from neglect of his needs, including toileting, skin care, wound prevention, hydration, and activities of daily living;

    b.     In violation of 210 ILCS 9/95 of the Illinois Assisted Living and Shared Housing Act, failed to protect Donald's right to be free from neglect;

17

HAMILTON0085

c.   Failed to develop, modify and implement a service plan that adequately addressed Donald's needs, including his dehydration risk, fall risk, and risk of skin breakdown;

d.   Failed to implement interventions required to prevent or minimize the risk to Donald of sustaining injury or harm from falling;

e.   Failed to provide care, monitoring, and supervision to prevent Donald from developing severe skin breakdown;

h.   Failed to properly assess Donald's suitability for continued residency in an assisted living environment upon his admission in October 2021 and after a significant change in his condition;

i.   Negligently re-admitted Donald to its facility on February 23rd, when his medical and physical condition and needs made him unsuitable for an assisted living environment;

j.   Failed to provide Donald assistance with activities of daily living that Donald required, in violation of section 295.4020 of the Assisted Living and Shared Housing Establishment Code;

k.   Failed to modify and implement a service plan that adequately addressed Donald's significant changes, including his fall risk, medications and behaviors, nutritional needs, and risk of skin breakdown;

l.   Negligently managed Donald's urinary catheter, including improperly inserting the catheter, preventing him from voiding urine; and

m.   Was otherwise careless and negligent.

22.   As a direct and proximate result of LAMOINE's negligence as set forth above, Donald suffered personal injuries and died as a result of those injuries on April 5, 2022.

23.   As a result of Donald Rebman's death, his next of kin, Linda Rebman, Bradley Rebman, Joseph Rebman, and Mary Rebman, suffered a loss of companionship and society, grief, sorrow, and mental suffering.

HAMILTON0086

24.    Bradley Rebman brings this action as the next of kin of Donald Rebman for damages incurred as a result of his death pursuant to 740 ILCS 180/0.01, *et seq.*, commonly known as the Illinois Wrongful Death Act.

25.    Attached and incorporated in this Complaint as **Exhibit A** is the affidavit of one of Plaintiff's attorneys filed pursuant to 735 ILCS 5/2-622.

*WHEREFORE*, Plaintiff, BRADLEY REBMAN, as Court-Appointed Representative of the Estate of DONALD REBMAN, deceased, demands judgment against Defendant, LAMOINE GROUP, LLC, in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus costs of suit, statutory remedies, and all other relief this Court deems appropriate.

*Respectfully submitted,*

By: ___/s/ Thomas W. Dillon_____
        Attorney for Plaintiff

Thomas W. Dillon (6206821)
Michael A. Burr (Of Counsel) (6198456)
KONICEK & DILLON, P.C.
21 W. State St.
Geneva, IL 60134
630-262-9655
tom@konicekdillonlaw.com
mburrlaw@gmail.com
e-service@konicekdillonlaw.com

HAMILTON0087

IN THE CIRCUIT COURT OF THE EIGHTH JUDICIAL CIRCUIT
SCHUYLER COUNTY, ILLINOIS

BRADLEY REBMAN,                                    )
Independent Administrator of                       )
the Estate of DONALD REBMAN, deceased,             )
                                                   )
                        Plaintiff,                 )
                                                   )        Case No. 2024 LA 3
            v.                                     )
                                                   )        JURY DEMANDED
THE LAMOINE RETIREMENT LIVING, and                 )
LAMOINE GROUP, LLC                                 )
                                                   )
                        Defendants.                )

## AFFIDAVIT PURSUANT TO 735 ILCS 5/2-622

I, Michael A. Burr, under penalty of perjury, submit my affidavit in compliance with

section 2-622 of the Illinois Code of Civil Procedure, and in support of this action, state the

following:

1.      I am one of the attorneys representing Plaintiff.

2.      I am licensed to practice law in the State of Illinois.

3.      I have consulted with and reviewed the facts of this case with licensed health

care professionals who, I reasonably believe:

      (i)      are knowledgeable in the relevant issues involved in the particular action;

      (ii)     practice or have practiced within the last six (6) years, in the same area of

           health care or medicine that is at issue in this action;

      (iii)    are qualified by experience and demonstrate competence in the subject

           matter of this case;



EXHIBIT
A
HAMILTON0088

(iv)     that the reviewing health professionals determined in a written report, after a review of the medical records and other relevant materials, that there is a reasonable and meritorious cause for the filing of an action against Defendant. (See redacted report from care professionals, attached hereto)

4.     I have concluded on the basis of the reviewing health professionals' consultation that there is a reasonable and meritorious cause for filing of such action against the Defendant.

I declare under penalty of perjury that the foregoing information is true and correct.

*This concludes my affidavit.*

_____ /s/ Michael A. Burr _____
Attorney for Plaintiff

*Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the above-signed certifies that the statements set forth in this Affidavit are true and correct, and the above-signed certifies that he verily believes the same to be true. 735 ILCS 5/1-109*

Thomas W. Dillon (6206821)
Michael A. (6198456)
*(Of Counsel to Konicek & Dillon, P.C.)*
Konicek & Dillon, P.C.
21 W. State St.
Geneva, IL 60134
(630) 262-9655
tom@konicekdillonlaw.com
mburrlaw@gmail.com
e-service@konicekdillonlaw.com

HAMILTON0089

March 5, 2024

Mr. Thomas W. Dillon
Mr. Michael A. Burr
KONICEK AND DILLON, PC
21 West State Street
Geneva, Illinois 60134

Re: *Rebman v. The Lamoine Retirement Living, and Lamoine Group, LLC ("Lamoine")*

Dear Mr. Dillon and Burr:

I have completed my review of the records and documents provided by your office regarding Donald Rebman. I reviewed records from The Lamoine Retirement Living facility, McDonough District Hospital, and Heritage Manor Mt. Sterling. My opinions hold to all named defendants in this case.

It is my opinion that there is a reasonable and meritorious cause for the filing of survival and wrongful death claims against Lamoine related to the care they provided to Mr. Rebman. I believe that Lamoine's negligent care was the proximate cause of Mr. Rebman's: fall with related pelvis fractures; severe dehydration; development and worsening of urinary tract infection; development and worsening of sepsis; development and worsening of facility acquired pneumonia; development of skin breakdown; and untimely death on April 5, 2022. My opinions are held to a reasonable degree of medical certainty and are based on the following:

It is my opinion that Lamoine and its staff breached the standard of care for assisted living facilities and its staff in the following ways:

- Admitted Mr. Rebman into its facility and then readmitted him when it was not equipped to provide that degree of care Mr. Rebman required
- Failed to follow physician orders for placement of Mr. Rebman's catheter
- Improperly inserted Mr. Rebman's catheter
- Failed to assure that Mr. Rebman's newly replaced catheter was flowing properly
- Failed to monitor Mr. Rebman's catheter after learning that the flow of urine was blocked and large amounts of blood was flowing into the catheter bag.

Donald Rebman was a resident of Lamoine, an Assisted Living Facility beginning on October 25, 2021, and ending February 28, 2022. Mr. Rebman was admitted with the following known

HAMILTON0090

diagnosis: Urinary Tract Infection; urinary retention; prostate cancer; low back pain; breast pain; Alzheimer's/dementia, and he required a catheter. On admission, Mr. Rebman required assistance with activities of daily living including dressing, toileting, bathing, personal hygiene, and supervision and administration of medications. Per physician orders, staff was required to change his catheter every 4 weeks, and to use a #16 Coude catheter with a 10 ml balloon.

Under the terms of Lamoine's establishment contract, as an Assisted Living Facility, Lamoine is not to admit or retain residents who: require assisted living services the facility is unable to provide; requires total assistance with 2 or more activities of daily living; requires insertion, sterile irrigation, and replacement of a catheter, unless administered by a licensed health professional. Here, Mr. Rebman required total assistance with more than 2 activities of daily living and he required insertion of a catheter every 4 weeks. It is not clear from the record whether a nurse or CNA inserted Mr. Rebman's catheter on February 23, 2022.

Mr. Rebman was not suited to be a resident of an assisted living facility. He required a level of care beyond that which the Lamoine facility could provide him, particularly upon his readmission on February 23, 2022, when he returned to the facility with pelvis fractures that compelled staff to implement additional assistance with his activities of daily living as well as the implementation of skin breakdown prevention, a required task an assisted living facility generally is not able to provide.

Physician orders required the insertion of a #16 Coude catheter with a 10 ml balloon. On February 23, 2022, in contradiction of physician orders, staff inserted a #16 Coude catheter with a 30 ml balloon. Staff not only inserted the wrong catheter, they did so in a negligent manner. The standard of care requires that staff confirm the flow of urine through the catheter following its insertion. This was not done here as evidenced by the fact that approximately 8.5 hours after insertion of the catheter, Mr. Rebman approached staff and advised that no urine had flowed through the catheter since its insertion and that the catheter bag contained red blood. When checking the bag, staff discovered 50 ml of red blood and no urine in the bag.

The 50 ml of blood in the catheter bag is indicative of a puncture or laceration of Mr. Rebman's urethra caused by the improper insertion of the catheter by Lamoine's staff. The lack of urine in the bag establishes that the flow of urine was blocked, most likely from improper insertion of a #16 catheter with a 30 ml balloon as opposed to a 10 ml balloon. Aware that Mr. Rebman was bleeding out of his urethra as opposed to urinating, staff was required to make 15-minute checks of Mr. Rebman to assure that they had corrected the problem after Mr. Rebman brought the catheter issues to their attention. It wasn't until another 1.5 hours later that staff found Mr. Rebman sitting on the floor of his room, with feces on the floor and his hands, and no reference to any urine. 1.5 hours passed and staff did nothing to confirm that the bleeding had stopped and his urethra was unblocked. It is well known that when one's bladder becomes full, it places pressure on the bowels. It is likely that Mr. Rebman experienced a sudden and intense need to urinate and defecate as a result of his full bladder. It is likely that Mr. Rebman fell while

HAMILTON0091

experiencing urgency and having to go to the bathroom. The fact that Mr. Rebman sustained 2 fractures to his pelvis further supports that a fall occurred.

Finally, despite documentation that Mr. Rebman said he sat down, the fact that staff conducted a full fall assessment suggests that they believed a fall had occurred. Mr. Rebman was sent to the hospital on February 23, 2022, where he was diagnosed with the pelvis fractures and later returned to Lamoine the same day.

According to documentation, on February 28, 2022, staff found Mr. Rebman on the floor of his room complaining of pain. He was transferred to McDonough District Hospital where he was diagnosed with severe dehydration, infection, sepsis, facility acquired pneumonia, and skin breakdown. Mr. Rebman remained hospitalized until March 7, 2022 and was then transferred to a long-term skilled nursing facility, where he died on April 5, 2022. It is my opinion to a reasonable degree of medical certainty that Mr. Rebman's septic shock was cause by Lamoine's negligent catheter care, and contributed to Mr. Rebman's untimely death.

The above described deviations from the standard of care for an assisted living facility and its staff caused Mr. Rebman to become infected, septic and he ultimately died. Before dying, he fell, sustaining a painful fractured pelvis. After his return to the facility on March 23, 2022, staff failed to assure he received adequate hydration resulting in severe dehydration. Lamoine's failure to implement a turning and repositioning program resulted in significant pressure injuries on his backside. Staff's failure to get Mr. Rebman up and moving after his return to the facility resulted in his development of pneumonia. The combination of all of these conditions caused Mr. Rebman great pain, suffering, and anguish, and ultimately contributed to his untimely death.

To a reasonable degree of medical certainty, there is a reasonable and meritorious case against Lamoine and all named defendants.

I am a physician licensed to practice medicine in Illinois. I am qualified to offer opinions in this case by virtue of my training and experience in the field of internal medicine and cardiology in addition to surgery training during my residency.

I am residency trained in internal medicine and fellowship trained in non-invasive and invasive cardiology with board certification granted by the American Board of Internal Medicine. I have practiced internal medicine and cardiology on a continuous and full-time basis since 1987 and have treated patients similar to Mr. Rebman.

In formulating my opinions, I relied on my education and experiences in managing patients similar to Mr. Rebman involved in this instance. I have reviewed the medical records provided to me by your office in regard to Mr. Rebman. Each of the opinions expressed in this report is based upon reasonable medical probability.

HAMILTON0092

Very truly yours,



HAMILTON0093